UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
DYROL HARDING and AYANNA PARKER
HARDING,

                Plaintiffs,                                MEMORANDUM
                                                              AND ORDER
     -against-                                    17 CV 4622 (CBA) (RML)

STATE FARM FIRE AND CASUALTY
COMPANY,

                Defendant.
----------------------------------------------------------X

LEVY, United States Magistrate Judge:

        On February 16, 2018, the parties to this insurance coverage denial action requested an in camera review of four documents that plaintiffs believe defendant has improperly withheld. (Joint Motion for In-Camera Review of Records, dated Feb. 16, 2018 ("Joint Mot."), Dkt. No. 12.) The parties submitted the documents to chambers on March 1, 2018. For the reasons explained below, I find that the documents are all privileged attorney-client communications that need not be produced to plaintiffs, in whole or in part.

## BACKGROUND

        Plaintiffs in this diversity case, Dyrol and Ayanna Parker Harding ("plaintiffs"), contend that defendant State Farm Fire and Casualty Company ("defendant" or "State Farm") improperly denied them coverage for their homeowner's insurance claim and is, therefore, in breach of its contract of insurance. State Farm contends the denial was justified because plaintiffs were no longer residing in the home at the time of the loss, as required by their policy.

## DISCUSSION

A. <u>Legal Standard</u>

        Because all four of the disputed documents are, on their face, communications

from defendant's outside counsel (not counsel in this matter) to defendant, the court analyzes them under New York law to determine whether they are privileged attorney-client communications.[1]  "It is not contested that, in a diversity case, the issue of privilege is to be governed by the substantive law of the forum state, here, New York."  Dixon v. 80 Pine St. Corp., 516 F.2d 1278, 1280 (2d Cir. 1975) (citing Massachusetts Mutual Life Ins. Co. v. Brei, 311 F.2d 463, 465-66 (2d Cir. 1962); see also FED. R. EVID. 501; Safeco Ins. Co. of Am. v. M.E.S., Inc., 289 F.R.D. 41, 45 (E.D.N.Y. 2011) ("Since this is a diversity action involving only state-law claims, 'it is state law that defines the elements of the attorney-client privilege.'") (internal citations omitted).

Under New York law, absent a client's waiver, "an attorney or his or her employee, or any person who obtains without the knowledge of the client evidence of a confidential communication made between the attorney or his or her employee and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication."  N.Y. C.P.L.R. § 4503(a)(1).  "[T]he elements of the attorney-client privilege are 'the existence of an attorney-client relationship, a communication made within the context of that relationship for the purpose of obtaining legal advice, and the intended and actual confidentiality of that communication.'"  Safeco, 289 F.R.D. at 46 (internal citations omitted).  "[F]or the privilege to apply when communications are made from attorney to client -- whether or not in response to a particular request -- they must be made for the purpose of facilitating the

---

[1] If the court were to conclude that any of the documents are *not* privileged attorney-client communications, the next inquiry would be whether they are protected attorney work product. Federal law, even in diversity actions, governs that analysis.  See Grinnell Corp. v. ITT Corp., 222 F.R.D. 74, 77 (S.D.N.Y. 2003) ("While state law generally provides the rules of decision for questions of privilege in diversity actions, 'federal law governs the applicability of the work product doctrine in all actions in federal court.'") (internal citations omitted).  Because I conclude that all of the documents are, in fact, privileged attorney-client communications, this order does not address the legal standards governing work product.

rendition of legal advice or services, in the course of a professional relationship." Rossi v. Blue Cross & Blue Shield, 540 N.E.2d 703, 706 (N.Y. 1989) (citation omitted). "[T]he burden of proving each element of the privilege rests upon the party asserting it." People v. Mitchell, 448 N.E.2d 121, 123 (N.Y. 1983).

"The privilege is of course limited to communications – not underlying facts." Spectrum Sys. Int'l Corp. v. Chem. Bank, 581 N.E.2d 1055, 1060 (N.Y. 1991) (citing Upjohn Co. v. United States, 449 U.S. 383, 395–96 (1981)). "The communication itself must be primarily or predominantly of a legal character." Id. (citing Rossi, 540 N.E.2d at 706.) However, "the privilege is not lost merely by reason of the fact that it also refers to certain nonlegal matters," as "the nature of a lawyer's role is such that legal advice may often include reference to other relevant considerations." Rossi, 540 N.E.2d at 706. In addition, the privilege may not be improperly "used as a device to shield discoverable information." Spectrum, 581 N.E.2d at 1061. Thus, an investigative report is not privileged "merely because an investigation was conducted by an attorney; a lawyer's communication is not cloaked with privilege when the lawyer is hired for business or personal advice, or to do the work of a nonlawyer." Id. (citation omitted). "Yet it is also the case that, while information received from third persons may not itself be privileged, a lawyer's communication to a client that includes such information in its legal analysis and advice may stand on different footing. The critical inquiry is whether, viewing the lawyer's communication in its full content and context, it was made in order to render legal advice or services to the client." Id. (internal citation omitted).

   B. Documents 88 & 89

The first documents I reviewed are two emails, dated September 13, 2016 and October 14, 2016, from outside counsel at the firm Cozen O'Connor to defendant's claim

specialist, Pierre Jean. Defendant states that the firm was retained "to provide its legal advice, opinion, or conclusion as to the potential for subrogation against possible negligent third parties who may have been responsible for causing the fire damage to the subject premises," and that these are therefore protected attorney client communications.[2] (Joint Mot. at 3.) Plaintiff contends that "while such records may not be discoverable to a defendant sued by a carrier in subrogation since the documents were generated in anticipation of that particular litigation . . . [i]n a first-party action commenced by the carrier's insured the privilege does not apply." (Id. at 2 (citing Firemen's Ins. Co. of Newark, N.J. v. Gray, 41 A.D.2d 863, 342 (3d Dep't 1973).) Defendant maintains, however, that "[s]imply because subrogation documents and communications may not have been prepared for or in anticipation of litigation against the Plaintiffs does not render them any more susceptible to disclosure." (Id. at 3.)

The case plaintiffs cite is inapposite. In that case, the defendant insurance company refused to disclose nearly its entire claim and underwriting file "on the ground that the balance of the file was privileged, in that it was prepared for litigation." Firemen's, 41 A.D.2d at 863–64. The materials were thus analyzed under N.Y. C.P.L.R. § 3101(d)(2), which covers materials prepared in anticipation of litigation by a party or its representative – i.e., not solely materials prepared by an attorney. See also Matter of Kotick, 2016 N.Y. Slip Op. 32788(U), at 8–9, 2016 N.Y. Misc. LEXIS 5164, at *10 (N.Y. Sur. Ct. 2016) (distinguishing Firemen's).

My in camera review confirms that these documents constitute communications by defendant's outside counsel "made for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship," Rossi, 540 N.E.2d at 706, and which appear intended to be confidential. They also appear to have actually been confidential, as only

---

[2] In the alternative, defendant argues the emails are protected work product. As discussed above, however, this analysis is unnecessary.

defendant and counsel were copied on the messages. I therefore find that these are privileged attorney-client communications.

C. Documents 82 & 85

The other documents I reviewed are two letters, dated December 2, 2016 and February 16, 2017, from defendant's outside counsel at the firm Feldman, Ruby, Kirby & Farquharson, P.C. to defendant's claim specialist, Pierre Jean. Defendant states that these documents "primarily and predominantly consist of outside counsel's communications with State Farm regarding his legal advice, opinions, or conclusions as to State Farm's rights and obligations under the policy and controlling precedent. These communications were intended to be and remain confidential." (Joint Mot. at 3–4.) Plaintiffs argue that the firm was "retained by Defendant to conduct an examination under oath of Plaintiff Dyrol Harding as required under the policy," and that he was therefore conducting an investigative function that is no different from that of an "independent adjuster reporting about a recorded statement taken of the insured." (Id. at 3.) Essentially, plaintiffs are arguing that because counsel's work was that of a non-lawyer, it is not privileged, and must therefore be turned over as a document "prepared in the ordinary course of an insurance company's business." (Id.) Defendant counters, however, that the "mere fact that an insurer involves an attorney in its investigation does not automatically deprive the insurer of its right to enjoy the privilege of confidential attorney-client communications." (Id. at 4.) Defendant also notes the principle of Rossi that so long as the communication is primarily of a legal character, the privilege is not lost, even though it refers to non-legal concerns. (Id.)

Were plaintiff's characterization of this outside counsel's work as being merely that of a non-lawyer correct, its arguments would have merit. However, defendant has asserted that it retained counsel for a broader purpose than just conducting an examination: providing its legal opinion and advice about what defendant should do with respect to the claim. If

5

defendant's characterization of counsel's role is correct, and if the communications are primarily of a legal nature, then the communications are without question privileged.

My in camera review confirms that the scope of counsel's work was well beyond that of a non-lawyer investigator. Both letters are of a primarily legal character which were "made for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship," Rossi, 540 N.E.2d at 706, and were intended to remain confidential. They do much more than simply report the statements made in the course of the examination under oath. They provide defendant with extensive legal analysis, advice, and recommendations regarding the issues at the heart of this case. I therefore find that these are privileged attorney-client communications.

## CONCLUSION

As discussed above, all four documents are privileged attorney-client communications. Defendant therefore properly withheld them from plaintiffs and will not be compelled to produce them to plaintiff, in whole or in part.

SO ORDERED.

Dated: Brooklyn, New York
March 16, 2018

/s/
ROBERT M. LEVY
United States Magistrate Judge